UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Civil No. 03-6501(DSD/SRN)


Sarah Pachl, a minor, by her
parents Kevin and Suzanne Pachl,

       Plaintiffs,

v.                                                                            **ORDER**

Alice Seagren, in her capacity as
Commissioner of the Minnesota
Department of Education, and
School Board of Independent School
District No. 11, Anoka-Hennepin,

       Defendants.


      Judith A. Gran, Public Interest Law Center of
      Philadelphia, 125 South Ninth Street, Suite 700,
      Philadelphia, PA 19107 and Sonja D. Kerr, Disability Law
      Center of Alaska, 3330 Arctic Boulevard, Suite 103,
      Anchorage, AK 99503, counsel for plaintiffs.

      Nancy E. Blumstein, Esq., Catrina O. Sapp, Esq., Sonja J.
      Guggemos, Esq. and Ratwik, Roszak & Maloney, P.A. 730
      Second Avenue South, Suite 300, Minneapolis, MN 55402,
      counsel for Independent School District No. 11.

      Martha J. Casserly, Minnesota Attorney General's Office,
      445 Minnesota Street, St. Paul, MN 55101, counsel for
      Alice Seagren.


      This matter is before the court upon the motion of defendant

Independent School District Number 11 for judgment on the

administrative record and defendant Alice Seagren's motion for

summary judgment.  Based upon a review of the file, record and proceedings herein, and for the reasons stated, the court grants the motions.

## BACKGROUND

Plaintiffs Kevin and Suzanne Pachl bring this action pursuant to 20 U.S.C. § 1415(i)(2) on behalf of their minor daughter, Sarah, to obtain judicial review of the result reached in an "impartial due process hearing" conducted under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. §§ 1400-87. Defendant Independent School District Number 11 ("the District") is Sarah's school district and the "local educational agency" responsible for her education under the IDEA.  See 20 U.S.C. § 1401(15).  Defendant Alice Seagren is commissioner of the Minnesota Department of Education ("MDE"), which is the "state educational agency" responsible for supervising the District.  See 20 U.S.C. § 1401(28).[1]

Congress enacted IDEA "to ensure that all children with disabilities have available to them a free appropriate public education ("FAPE") that emphasizes special education and related services designed to meet their unique needs and prepare them for

---

[1] Plaintiffs' claims against Seagren in her official capacity are equivalent to claims against MDE, and the court therefore discusses them as such.  See W.B. v. Matula, 67 F.3d 484, 499 (3d Cir. 1995); Va. Office of Protection & Advocacy v. Va. Dep't of Educ., 262 F. Supp. 2d 648, 655 (E.D. Va. 2003).

employment and independent living." 20 U.S.C. § 1400(d)(1)(A).
Sarah suffers from intractable epilepsy, Dandy-Walker Syndrome and
other developmental disabilities. As a "child with a disability,"
the District educates Sarah according to an "individualized
education program," or "IEP." 20 U.S.C. §§ 1412(a)(4) &
1413(a)(1). The IEP is a written statement of, among other things,
the special education services to be provided to Sarah. 20 U.S.C.
§ 1414(d). Sarah's IEP is formulated by an "IEP team," which
consists of her parents, teachers and specialists. 20 U.S.C.
§ 1414(d)(1)(B).

Plaintiffs requested an administrative hearing to resolve
certain disputes regarding Sarah's education and the District's
observance of the procedural requirements of IDEA. The matters
included (1) whether extended school year ("ESY") services provided
to Sarah in 2003 were appropriate, (2) whether the District
provided plaintiffs with proper written notice regarding Sarah's
IEP in the fall of 2003, (3) whether the District properly observed
procedural requirements in conducting the IEP team meeting which
produced Sarah's IEP in the fall of 2003 and (4) whether Sarah
should be classified as deaf or hard of hearing ("D/HH") and
receive services from a D/HH teacher. On September 12, 2003,
defendant MDE appointed Independent Hearing Officer ("IHO") Roberta
A. Kreb to hear the case. The hearing was held on September 22
through September 24, 2003. On October 17, 2003, the IHO issued a

written decision holding that the District had provided Sarah with FAPE and that any violations of IDEA's procedural requirements had been harmless.

The IHO also held that Sarah should not be designated as D/HH because of insufficient evidence.  At the hearing, the District's audiologist had testified that, to determine whether Sarah qualified as D/HH under Minnesota's rule, Sarah's hearing loss would have to be diagnosed as either "sensorineural" or "conductive."  (Tr. at 419.)  The audiologist further testified that, to make the diagnosis, Sarah would have to undergo either a "bone conduction test" or an "auditory brainstem response ["ABR"] evaluation."  (Id. at 419.) Although the IHO refused to designate Sarah as D/HH, she ordered Sarah's IEP team to meet within ten days to consider further audiological evaluation and to initiate such evaluation within thirty days of the meeting.  However, in the meantime, plaintiffs obtained an ABR test at their own expense.

Plaintiffs commenced this civil action to appeal the IHO's decision.  Plaintiffs also join claims against defendant MDE. Plaintiffs previous motion for partial summary judgment and defendant MDE's motion to dismiss were denied by order dated September 3, 2004.  The District now moves for judgment on the record, and defendant MDE moves for summary judgment.

**DISCUSSION**

## I.   Standard of Review/IDEA Framework

"Because judges are not trained educators, judicial review under the IDEA is limited." E.S. v. Indep. Sch. Dist., No. 196 Rosemount-Apple Valley, 135 F.3d 566, 569 (8th Cir. 1998). Although the court must base its decision on the preponderance of the evidence, it must also give "due weight" to the results of administrative proceedings and resist "any impulse to 'substitute [its] own notions of sound educational policy for those of the school authorities.'" Id. at 569 (alteration in original) (quoting Bd. of Educ. v. Rowley, 458 U.S. 176, 206 (1998)); see also Neosho R-V Sch. Dist. v. Clark, 315 F.3d 1022, 1028 (8th Cir. 2003). The court may grant judgment on the record in an IDEA case even if disputed issues of material fact exist. See Indep. Sch. Dist. No. 283 v. S.D. ex rel. J.D., 88 F.3d 556, 561 (8th Cir. 1996). The burden of proof rests upon the party challenging the administrative decision. E.S., 135 F.3d at 569.

The overriding concern of the IDEA judicial review process is to ensure that the child has been provided access to FAPE. See Fort Zumwalt Sch. Dist. v. Clynes, 119 F.3d 607, 610 (8th Cir. 1997). Whether FAPE has been provided presents a mixed question of law and fact. See id. at 611. An educational agency provides FAPE

when it complies with IDEA procedures and offers an educational program "'reasonably calculated to enable the child to receive educational benefits." <u>Rowley</u>, 458 U.S. at 206-07.

Procedural violations of IDEA are subject to harmless error analysis. <u>See</u> <u>S.D.</u>, 88 F.3d at 562 (quoting <u>Roland M. v. Concord Sch. Comm.</u>, 910 F.2d 983, 994 (1st Cir. 1990)). Such violations are actionable only when they seriously hamper parents' participation rights, cause a deprivation of educational benefits or otherwise compromise a child's right to appropriate education.[2] <u>Id.</u> at 562. The substantive requirements of IDEA are viewed in the light of limited public resources. <u>See</u> <u>Fort Zumwalt</u>, 119 F.3d at 611. Accordingly, "IDEA does not require that a school either maximize a student's potential or provide the best possible education at public expense." <u>Id.</u> at 611 (citing <u>Rowley</u>, 458 U.S. at 203). Rather, IDEA is satisfied when the educational agency provides

---

[2]  Plaintiffs cite <u>M.L. v. Federal Way School District</u>, 387 F.3d 1101, 1103 (9th Cir. 2004), <u>amended by</u> 394 F.3d 634 (9th Cir. 2005), and suggest that procedural errors under IDEA are not subject to harmless error analysis.  In <u>M.L.</u>, two members of the three-judge panel concluded that harmless error analysis does indeed apply to procedural violations of IDEA.  <u>See</u> <u>id.</u> at 651-52 (Gould, J., concurring in part and concurring in the judgment); <u>id.</u> at 658 (Clifton, J., dissenting).  Only Judge Alarcon, who announced the judgment of the court, broke with his colleagues on the panel and perhaps the entire Ninth Circuit bench to opine that procedural errors should be subjected to "structural error" analysis.  <u>See</u> <u>id.</u>  Therefore, plaintiffs' citation of <u>M.L.</u> has very little persuasive force.

individualized education and services sufficient to provide the disabled child with "some educational benefit." <u>Neosho R-V</u>, 315 F.3d at 1027.

## II. Judgment on the Record

### A.   Deafness Issue

Plaintiffs contend that the hearing officer erred when she failed to order that Sarah receive services related to hearing impairment ("D/HH services"). The District responds that plaintiffs did not properly raise the issue of D/HH services before the IHO and that plaintiffs have therefore failed to exhaust their administrative remedies. The District argues that plaintiffs raised only the issue whether Sarah should receive a formal disability classification of "D/HH."

The court rejects the District's exhaustion argument. At the prehearing conference, the IHO demonstrated that she understood plaintiffs to have raised both the issues of classification and services. The IHO and counsel engaged in the following colloquy:

> **HEARING OFFICER KREB:** But I do hear within the counsel's request and parent's request that the issue is not the classification. I think it's the additional services that's being requested that comes with –
>
> **MS. KERR:** A DHH teacher on the team.
>
> **HEARING OFFICER KREB:** So, that's the issue that's being raised.

(Preh'g Tr. at 20.)   After the prehearing conference, the IHO issued an order framing plaintiffs' issue as follows:

> Should the Student be classified as having a hearing impairment as outlined in the Minnesota Deaf and Hard of Hearing Rule which would then require the participation of a deaf and hard of hearing teacher on the Students [sic] IEP team?

(Preh'g Order ¶ 1(d).)   The IHO's order shows that plaintiffs fairly presented the question whether the District should have provided Sarah with services from a D/HH teacher.   (See also IHO Decision at 8.)   Therefore, plaintiffs did not fail to exhaust their administrative remedies.

Nevertheless, the IHO's framing of the D/HH issue was problematic because it erroneously assumed that Sarah must meet the criteria of Minnesota Rule 3525.1331 ("D/HH rule") to receive services geared toward her hearing impairment.   The D/HH rule appears in a subchapter entitled "Entrance and Exit Criteria."   The purpose of the rules in that subchapter is to provide objective standards to determine whether a pupil should "enter" special education on account of a particular disability.[3]   See Minn. Rule 3525.1331, subp. 1.   Once the District determines that a pupil requires special education, it must address all of the pupil's needs "whether or not commonly linked to the disability category in

---

[3]   Conversely, a pupil receiving special education must be shown not to meet the criteria before he or she can "exit" special education.

which" the pupil was initially classified.  34 C.F.R. § 300.532(h); see also § 300.300(a)(3)(ii) ("services and placement needed by each child with a disability to receive FAPE must be based on the child's unique needs and not on the child's disability").

Sarah is and has long been deemed eligible for special education and related services by virtue of her other disabilities. Thus Sarah need not meet the D/HH rule entrance criteria as a condition precedent to receiving D/HH services.[4]  Instead, the District is obligated to provide such services to Sarah if they are necessary for her to receive FAPE.  The court must therefore determine whether the District's failure to provide such services resulted in a denial of FAPE.  Although the IHO did not address this issue explicitly, she nevertheless granted some relief by ordering the District "to convene an IEP meeting within 10 school days to determine [Sarah's] need for further audiological assessment, develop an assessment plan and initiate any evaluations determined appropriate by the IEP team with [sic] 30 days of the meeting."  (IHO Decision at 16.)

Plaintiffs have failed to show by a preponderance of the evidence that the District's failure to provide D/HH services

---

[4]   The court's holding is not meant to foreclose IEP teams from referring to the D/HH rule as a guidepost for judging the severity of a pupil's hearing loss, the degree of need for services or for other purposes.  The court merely observes that, in the case of a pupil already involved in special education, the rule does not establish a mandatory prerequisite to the receipt of hearing-related services.

9

resulted in a denial of FAPE.  A child's substantive educational program accords FAPE when it provides individualized education and services sufficient to provide the disabled child with some educational benefit.  See Neosho R-V, 315 F.3d at 1027.  Plaintiffs fail to point to any evidence that the absence of D/HH services from Sarah's IEP caused her to suffer a loss of educational benefit.  Indeed, plaintiffs do not even argue that Sarah suffered such a loss.  At the same time, the prospective relief ordered by the IHO was appropriate to ensure that Sarah's hearing be fully evaluated and monitored to meet her ongoing educational needs.  The IHO's disposition of the D/HH issue is therefore affirmed.

**B.   ESY 2004 Issue**

Plaintiffs argue that the IHO erred when she dismissed their claim that the District violated IDEA's procedural requirements by failing to include ESY services in an interim IEP which the parties agreed would be in force from September 1, 2003, to October 15, 2003.  Plaintiffs also contend that the IHO should have determined the substantive content of Sarah's IEP for ESY 2004.  ESY services are special education and related services provided beyond the normal school year in accordance with the child's IEP.  See 34 C.F.R. § 300.309(b).  ESY services must be provided when the child's IEP team determines that they are necessary to provide FAPE.

10

The District does not dispute that Sarah is in need of ESY services.  The District argues, however, that it was unnecessary for ESY to be addressed in the interim IEP because no school breaks were scheduled during the approximately six weeks the IEP was to be in force.  The District also points out that, when the interim IEP expired, an earlier IEP which included ESY services would automatically take its place absent further agreement of the parties.  The IHO agreed with the District, concluding that the earlier IEP governed Sarah's ESY services pending the outcome of a due process hearing appeal before Judge Ann Montgomery and that the District could not be called upon to defend an ESY 2004 program that did not yet exist.

The IHO's conclusion was correct as to both the procedural and substantive issues.  The IHO correctly observed that, by operation of the "stay-put" provisions of IDEA, the earlier IEP controlled the provision of ESY services to Sarah.  See 20 U.S.C. § 1415(j) (placement changes prohibited during due process proceedings and appeals).  The IHO also correctly determined that the interim IEP was sufficient to accord FAPE to Sarah during the period of time in which it was in force.  Because no vacation time was scheduled in September and October 2003, there is no practical reason why ESY should have been included in the interim IEP.

Furthermore, the IHO was justified in refusing to determine the services to be provided to Sarah during ESY 2004.  ESY services

are to be provided in accordance with the IEP. 34 C.F.R.
§ 300.309(b)(1)(ii). In turn, it is the responsibility of the IEP
team, not the IHO or district judge, to develop, review and revise
the IEP in the first instance. See 34 C.F.R. §§ 300.343(a) &
300.346. Plaintiffs offer no persuasive reason why the hearing
officer or the undersigned should usurp the authority and expertise
of Sarah's IEP team. When plaintiffs made their hearing request,
the team had nine months in which to develop Sarah's ESY 2004
program.[5] At the same time, the team was hamstrung by the "stay-
put" resulting from the litigation plaintiffs commenced before
Judge Montgomery. As a result of the "stay-put," the District
could not have implemented new plans for ESY 2004 without the
consent of plaintiffs. 20 U.S.C. § 1415(j). At the same time,
plaintiffs signaled their intention to withhold consent by
submitting the matter of ESY 2004 to this new litigation.
Therefore, plaintiffs have failed to show that the IEP team was
unjustified in failing to act sooner to plan for ESY 2004. The IHO
correctly declined to preempt the judgment of the IEP team.[6]

---

[5] While the District points out that ESY services are
provided during breaks other than summer break, plaintiffs address
only the summer months. (See Pls.' Mem. Resp. Defs. Mot. J. at
20.)

[6] Although parents may not always find satisfaction in the
IEP team process, it is the law. 34 C.F.R. § 300.344. Under that
law, the role of hearing officers and judges is not to act as team
members, but rather to react to the actions and omissions of the
team. See 34 C.F.R. §§ 300.507(a)(1) & 300.503(a). As such,
(continued...)

C.   **ESY 2003**

Plaintiffs argue that the District violated IDEA by failing to inform them what IEP would be used to guide Sarah's education during ESY 2003.  Plaintiffs do not contend that the substance of Sarah's ESY 2003 program was insufficient to accord FAPE.  Indeed, plaintiffs castigate the IHO for recasting their procedural claim as one addressing "the substantive education offered during Summer 2003."[7]  (Pls.' Mem. Resp. Defs.' Mot. J. at 22.)

Because plaintiffs' claim addresses only procedural matters, the court applies harmless error analysis.  The court considers whether the District's procedural transgressions, if any, seriously hampered Sarah's parents' participatory rights, caused a deprivation of educational benefits or otherwise compromised Sarah's right to an appropriate education.  See S.D., 88 F.3d at 562.  Plaintiffs have conceded that any procedural errors regarding ESY 2003 did not affect Sarah's substantive education.  Plaintiffs

_____

[6](...continued)
parents are not permitted to circumvent the IEP team by racing to the hearing room and the courthouse.

[7]  After thus limiting their claim, plaintiffs inexplicably later argue that "if the Court considers the substantive nature of the program, the Court must find that the Defendant ISD 11 failed to meet its burden of proof to establish that it provided Sarah with FAPE."  (Pls.' Mem. Resp. Defs.' Mot. J. at 25.)  That, however, is not the proper frame of analysis.  As challengers of the IHO's decision, it is plaintiffs who bear the burden of proof. E.S., 135 F.3d at 569.  Plaintiffs point to no evidence to refute the IHO's conclusion that Sarah received educational benefit and maintained performance on IEP goals and objectives.  Therefore, plaintiffs have not met their burden.

instead complain that the District did not hold an IEP meeting or provide plaintiffs with formal notice, see 34 C.F.R. § 300.503, prior to implementing new goals and objectives for ESY 2003. Therefore, the court examines whether these alleged procedural failures seriously hampered the ability of Sarah's parents to participate in her education.

The preponderance of the evidence in the record sustains the IHO's conclusion that Sarah's parents "are well versed and actively involved in [Sarah's] program of education." The record indicates that, through letters, telephone calls, meetings and site visits, Sarah's father was involved in every aspect of Sarah's education before, during and after ESY 2003. Moreover, the IHO appropriately discredited plaintiffs' assertion that they did not know which IEP was employed during ESY 2003. Mr. Pachl inquired which IEP would be used in a letter dated July 1, 2003. (Letter from Pachl to Peterson of 7/1/03.) Only two days later, the District responded that it was "continuing Sarah's current goals and objectives from her stayput IEP of May 2001" but "following the schedule of services found in the ESY IEP from 2000." (Letter from Peterson to Pachl of 7/3/03.)

Assuming that the District committed a procedural error, plaintiffs fail to explain how the notice they actually received was insufficient to fulfill the spirit, if not the letter, of IDEA notice requirements. The purpose of notice, as plaintiffs aptly

14

observe, is to give plaintiffs "the full opportunity to object." (Pls.' Mem. Resp. Defs.' Mot. J. at 24.)  Here there was not only actual notice, but actual objection.  On August 1, 2003, Mr. Pachl wrote to object that the District was not exclusively using the plans for ESY 2000.  (Letter from Pachl to Peterson of 8/1/03.) Later, before the IHO, Mr. Pachl conceded that the goals and objectives from ESY 2000 were inappropriate for application three years later in ESY 2003.  (Tr. at 571-75 ("Technically 2003 goals and objectives should have been worked on.")  Thus, to summarize, plaintiffs contend the District should have given formal notice that it would not be implementing goals which plaintiffs concede were outmoded, so that plaintiffs could object to the use of goals which they concede were appropriate.  Plaintiffs cannot have been prejudiced by the District's failure to notify them of information to which they could have interposed only frivolous substantive objections.  Accordingly, any procedural error by the District in failing to issue formal notice was harmless.

As for any failure of the District to convene an IEP meeting, the District offered to meet regarding ESY 2003 and Mr. Pachl declined.  (Letter from Peterson to Pachl of 6/18/03; Letter from Pachl to Peterson of 6/19/03.)  Plaintiffs may not stiff-arm the District's efforts to comply with IDEA and then later complain that their procedural rights have not been respected.  Plaintiffs' ESY 2003 claim is meritless.  The IHO is affirmed.

**D.   Hearing Issues**

Plaintiffs allege that the IHO erroneously placed the burden of proof on plaintiffs.  The IHO's order belies the claim.  (See IHO Decision at 10 ("In accordance with the provisions of Minn. Stat. § 125A.091, subd. 16, the burden of proof in this matter is upon the District.").)

Plaintiffs also allege that the IHO treated Mr. Pachl inappropriately while he was on the witness stand.  Based upon the record, the court disagrees.  Mr. Pachl should have answered the questions put to him.  The IHO's handling of Mr. Pachl, though not gentle, was not an abuse of discretion.

**E.   Neutral Facilitator**

The District appeals the IHO's order that the parties use a neutral facilitator for all future meetings.  (IHO Decision at 16.) Plaintiffs do not oppose the District's appeal.

While the court understands the reasoning behind the IHO's order, given the long history of contention between the parties, the court finds that it was inappropriate.  The IHO's order was not limited by time or subject matter and, as the District points out, no explicit authority exists to support it.  Furthermore, both parties apparently want the freedom and autonomy to make mutual decisions regarding the use of alternative dispute resolution methods.  Therefore, based on these particular facts, the court concludes that that part of the IHO's order should be reversed.

16

## III. Plaintiff's Claims Against Defendant MDE

### A.     Summary Judgment Standard

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  In order for the moving party to prevail, it must demonstrate to the court that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986) (quoting Fed. R. Civ. P. 56(c)). A fact is material only when its resolution affects the outcome of the case.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party.  See id. at 252.

On a motion for summary judgment, all evidence and inferences are to be viewed in a light most favorable to the non-moving party. See id. at 255.  The non-moving party, however, may not rest upon mere denials or allegations in the pleadings, but must set forth specific facts sufficient to raise a genuine issue for trial.  See Celotex, 477 U.S. at 324.  Moreover, if a plaintiff cannot support each essential element of its claim, summary judgment must be

17

granted because a complete failure of proof regarding an essential element necessarily renders all other facts immaterial.  <u>Id.</u> at 322-23.

### B.   Requalification

As the court observed in its previous order, plaintiffs claim that defendant MDE has violated IDEA by maintaining "a policy that requires a pupil already deemed 'eligible for special education instruction and related services' to requalify as 'eligible for special education instruction and related services' when the pupil manifests a new, previously-undiagnosed disability."  (Sept. 3, 2004, Order at 11.)  Plaintiffs, however, have failed to adduce any evidence that MDE maintains such a policy.

Plaintiffs argue that an MDE memorandum dated September 21, 2004, provides evidence that MDE requires pupils to meet initial qualification standards to receive appropriate services when they manifest new disabilities.  (Wachlarowicz Aff. Ex. A.)  That memo, however, disproves the very proposition plaintiffs seek to establish.  The memo states that, when a disabled child receiving special education services is reevaluated pursuant to 34 C.F.R. § 300.536, "[i]t is *not necessary* for the child to meet initial eligibility criteria in order to continue to receive services." (<u>Id.</u> Ex. A at 1 (emphasis added).)  At the same time, the reevaluation must be "sufficiently comprehensive to identify all of the child's special education and related service needs, *whether or*

*not commonly linked to the disability category in which the child has been classified*." (<u>Id.</u> Ex. A at 2 (internal quotations and citations omitted) (emphasis added).)  The memo goes on to clarify that, "[a]lthough the eligibility criteria factors are used to ensure a comprehensive evaluation, the initial eligibility criteria need not be met upon reevaluation." (<u>Id.</u> Ex. A at 2.)  Plaintiffs' contention that the memo creates a issue of material fact is completely devoid of merit.[8]  MDE is entitled to summary judgment.

### C.  Alleged Duty to Provide ABR Testing

Plaintiffs next allege that MDE "failed to ensure identification of Sarah's hearing impairment by ensuring a means of ABR testing."  Plaintiffs' claim fails because they have not proved that any failure to provide the test was the fault of MDE.  A state educational agency is only liable under the IDEA when it shares substantial responsibility in denying FAPE to a child.  <u>See Renollett ex rel. Renollett v. Minnesota</u>, 2004 WL 1576716, at *3 (D. Minn. Jul. 13, 2004).  Plaintiffs have failed to identify any MDE policy or conduct that prevented Sarah from receiving an ABR test.  Although plaintiffs argue that MDE's disposition of

---

[8] Furthermore, plaintiffs' attack on the affidavit of Barbara Case is unwarranted.  In the affidavit, Case asserts that MDE does not maintain its own policy with regard to requalification. (Case Aff. ¶ 2.)  Rather, Case asserts that MDE's policy is to follow federal and state law.  (<u>Id.</u> ¶ 2.)  The September 21, 2004, memorandum, which extensively cites and quotes federal regulations, is perfectly consistent with Case's assertion. (Wachlarowicz Aff. Ex. A.)

Complaint No. 1871 manifested a policy of parent responsibility for obtaining the test, Magistrate Judge Lebedoff has already ruled, and this court agrees, that the decision does not purport to establish policy.  Simon v. Yecke, Docket No. 34, Civil No. 03cv6500, at 22-23 (D. Minn. May 10, 2004), adopted by Docket No. 35 (D. Minn. June 1, 2004).  The court likewise rejects plaintiffs' argument that MDE had a duty to notify them that their strained interpretation of Complaint No. 1871 was erroneous.  Therefore, MDE is entitled to summary judgment on plaintiffs' claim.

### D.   Hearing Officer Issue

Finally, plaintiffs claim that MDE breached its duty to provide them with a "knowledgeable" hearing officer, citing a litany of supposed errors she committed at the hearing.  MDE, however, is not liable for the content of an IHO's decision.  See Wachlarowicz, 2004 WL 2237069, at *9 n.6.  Evidence that an administrative judge has committed a legal error does not necessarily support the conclusion that the judge is not knowledgeable.  Nevertheless, the court has now upheld almost every aspect of the IHO's decision.  Thus, if correct judgment were the appropriate measure of an IHO's knowledge, this IHO was knowledgeable.  MDE is entitled to summary judgment.

**CONCLUSION**

Accordingly, **IT IS HEREBY ORDERED** that:

1.    Defendant Independent School District Number 11's motion for judgment on the administrative record [Doc. No. 67] is granted.

2.    Defendant Alice Seagren's motion for summary judgment [Doc. No. 70] is granted.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated:  June 20, 2005

                                        s/David S. Doty
                                        David S. Doty, Judge
                                        United States District Court

21